UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Criminal Case No. 19-20155-1
v.                              Honorable Linda V. Parker

JESSE JAMES HAWKINS,

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DETENTION ORDER AND DENYING AS MOOT DEFENDANT'S MOTION TO PRODUCE GRAND JURY TESTIMONY

This matter is presently before the Court on Defendant Jesse James Hawkins' motion to set aside the magistrate judge's March 19, 2019 detention order.[1] The magistrate judge found that Defendant should be detained pending trial because he posed a danger to the community and a risk of flight if released. (ECF No. 15.)

### Background

On March 20, 2019, a federal grand jury returned a three-count indictment charging Jesse Hawkins (hereafter "Defendant") and his brother Price Hawkins

---

[1] Defendant also previously filed a motion seeking grand jury testimony. That motion is moot in light of Defendant's guilty plea on April 8, 2020

with firearm offenses. Defendant is charged in two counts of the Indictment: (1) Receipt of a Firearm While Under Indictment in violation of 18 U.S.C. § 922(n); and (2) Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

On March 10, 2020, Defendant filed the pending motion to set aside the detention order. (ECF No. 104). In support of his request for release, Defendant cites the likely delay of his trial due to the two factors: the Government's indication that it would be filing additional charges against him and personal circumstances of the special agent involved in the case. In supplemental briefs, Defendant also cites the novel coronavirus (COVID-19) pandemic and the health risk the virus poses to him if he remains incarcerated. (ECF Nos. 108, 110.)

The Government opposes Defendant's motion, arguing that he has not challenged any of the factual or legal findings underlying the initial order of detention. (ECF No. 109.) The Government maintains that Defendant continues to pose a danger to the community and a risk of flight, and that COVID-19 is not the type of new information that would permit the reopening of the detention hearing.

COVID-19 is a serious and new disease that has not been previously seen in humans and for which there are currently no approved vaccines or antiviral treatments. *See https://www.cdc.gov/coronavirus/2019-ncov/faq.html*. Michigan Governor Gretchen Whitmer has described COVID-19 as a respiratory disease that

can result in serious illness or death and that easily spreads from person to person. *See, e.g.*, Executive Order, No. 2020-04 (Mar. 10, 2020). As of March 10, 2020, two cases of the coronavirus had been identified in Michigan. *Id.* On that date, the Governor issued a state of emergency across Michigan, *id.*; and, effective March 13, 2020, temporarily prohibited large assemblies and events and temporarily closed schools. Executive Order 2020-5 (Mar. 13, 2020). The Governor issued a subsequent Executive Order, effective March 24, 2020, which required Michigan "residents to remain at home or in their place of residence to the maximum extent feasible." Executive Order, No. 2020-21 (March 23, 2020). The order prohibited all public and private gatherings of any number of people occurring among persons not part of a single household. *Id.*

As of April 19, 2020, the number of confirmed COVID-19 cases in the State had grown to 31,424 individuals, with 2,391 known related deaths. https://www.michigan.gov/coronavirus. Nationally, as of the same date, there were 746,625 confirmed cases, with 39,083 related deaths. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html#reporting-cases. On April 9, 2020, Michigan's Governor extended the stay-at-home order until May 1, 2020. Executive Order No. 2020-42 (Apr. 9, 2020).

Incarcerated individuals face even greater risk of COVID-19 transmission due to the conditions often present in correctional and detention facilities. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. These conditions include that incarcerated individuals live, work, eat, study and recreate within congregate environments. *Id.* Additionally, there are many opportunities for the disease to be introduced into the prison population, such as staff members coming and going from the facility, the introduction of new inmates, and the movement of inmates between facilities, systems, court appearances, and outside medical appointments. *Id.* Further, supplies needed to exercise disease prevention (e.g. soap and alcohol-based hand sanitizer) and options for medical isolation may be limited. *Id.* The Centers for Disease Control and Prevention ("CDC") therefore has issued guidelines for the management of COVID-19 in correctional and detention facilities. *Id.*

On April 8, 2020, pursuant to a Rule 11 Plea Agreement, Defendant pleaded guilty in this matter to one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.[2] The plea agreement reflects

---

[2] Defendant executed a form waiving his physical presence for purposes of the plea and motion hearing on April 8, 2020. (ECF No. 113.) The Court accepted the waiver after finding that Defendant was advised by counsel of his right to be physically present for the hearing and that he was waiving that right knowingly and voluntarily.

that Defendant's sentencing guideline range is between 30-37 months. Defendant has been incarcerated since his arrest in this case on March 16, 2019, or for approximately 13 months. After accepting Defendant's guilty plea, the Court conducted a hearing on his motion for release from detention.

In support of the motion, defense counsel indicated that there have been five inmates diagnosed with the coronavirus in the St. Clair County Jail, where Defendant is being held. At least one of those inmates was housed in the same pod as Defendant, although the inmate was not one of his bunkmates. Nevertheless, inmates within a pod share many common areas and items (e.g., telephones, showers, and toilets). Defense counsel also informed the Court that inmate bedding and towels are not being regularly changed. Defense counsel asked the Court to not simply release Defendant pending sentencing, but to conclude that he has been incarcerated for a sufficient period to warrant a sentence at this juncture of time-served.

Counsel maintained that Defendant is an intelligent and educated individual, who has learned his lesson during his present current incarceration and is a changed man. Counsel stressed that any sentence the Court imposed could result in a life sentence due to the high risk of the coronavirus spreading rapidly through the jail and Defendant becoming infected.

The Government confirmed that, as of the date of the hearing, five St. Clair County Jail inmates have been diagnosed with coronavirus. The Government further indicated that two inmates with symptoms were tested, as well as two staff members. According to the Government, the jail recently closed the commissary to limit outside goods coming into the prison. In its response to Defendant's motion, the Government set forth other precautionary measures the jail has taken to reduce the risk of infection.

These steps include the cessation, since about March 16, 2020, of all in-person social visits. (ECF No. 111 at Pg ID 577-78.) Inmates are provided free family video visitation instead. (*Id.* at 578.) Inmates are permitted only non-contact visits with their attorneys, where the attorneys remain outside the secure part of the facility and are separated from inmates by a solid window which permits conversation. (*Id.*) Although the jail is strongly encouraging video visits between inmates and their attorneys. (*Id.*)

The jail has taken steps to reduce its population, and is now at approximately 60% of its capacity. (*Id.*) Certain categories of inmates have been released and local state courts are releasing many arrestees at arraignment. (*Id.*) Newly-arrested individuals entering the St. Clair County Jail are screened for symptoms of infection and remain segregated until they are arraigned. Any inmate showing symptoms or with any knowledge of having been exposed to the virus is

immediately placed in an isolation area for a period of fourteen days for monitoring and medical attention. Medical staff are on-site twenty-four hours a day. Inmates showing symptoms of the virus are immediately isolated. (*Id.*)

The jail is conducting extra cleaning and inmates are provided cleaning supplies twice a day. (*Id.*) Inmates are responsible for cleaning their own areas to avoid cross-contamination of the units. (*Id.*) Inmates may also request sanitation and disinfectant products. (*Id.*) The Court acknowledges the information provided by Defendant, however, that there are days and instances when inmates are not allowed to use cleaning supplies. (*See* ECF No. 110-1 at Pg ID 573.) And while Defendant informed his counsel of one occasion where linens and towels were not replaced weekly (*id.*), it appears that the jail is providing clean linens, towels, and other products on the same schedule as usual. (ECF No. 111 at Pg ID 577-78.) Jail staff are under orders to not report to work if they do not feel well. (*Id.*)

Many of the steps taken by the St. Clair County Jail are consistent with Executive Order No. 2020-29, which Governor Whitmer issued on April 1, 2020. (ECF No. 111-2.) The order institutes temporary protocols for Michigan Department of Corrections' facilities and recommends protocols for county jails, local lockups, and juvenile detention centers. (*Id.* at Pg ID 587.) In addition to the precautions described in the Government's brief, the order requires detention facilities to post signage and continually educate on the importance of social

7

distancing, handwashing, and personal hygiene. (*Id*. at 589.) It further requires facilities to minimize crowding and interactions of groups or ten or more people by, for example, scheduling more times for meals and recreation to reduce person-to-person contact. (*Id*.)

## Applicable Law and Analysis

In light of Defendant's guilty plea, his motion for release is now governed by 18 U.S.C. § 3143. The statute creates a presumption that a defendant who has been found guilty of an offense and is awaiting sentencing will be detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released …." 18 U.S.C. § 3143(a). This is because "[o]nce guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal. The conviction, in which the defendant's guilt has been established beyond a reasonable doubt, is presumably correct in law." *United States v. Vance*, 851 F.2d 166, 170 (6th Cir. 1988) (internal quotation marks and citation omitted). The defendant bears the burden of overcoming the presumption of detention. *Id.* at 169.

Defendant has not satisfied his burden of showing that he "is not likely to flee or pose a danger to the safety of any other person or the community if released." In fact, except for trying to convince the Court that he has learned his

8

lesson and changed during his thirteen-month period of incarceration, Defendant offers nothing to address the evidence the Government has presented to demonstrate his dangerousness and risk of flight.

This evidence includes Defendant's prior criminal history. In 2013, five years before the instant offense and while Defendant was fourteen or fifteen-years old, he was convicted in state court of felony armed robbery. (3/18/19 Hr'g Tr. at 5, ECF No. 27 at Pg ID 73.) In 2016, Defendant was convicted of felony fleeing after fleeing police in a motor vehicle while driving eighty miles an hour in a twenty-five mile per hour zone, stopping only when he crashed the vehicle. (*Id.* at 6, Pg ID 78.) The state court placed Defendant on Holmes Youthful Trainee Act ("HYTA") status for three years for that offense. (*Id.*) While under HYTA probation, Defendant pleaded guilty in state court to controlled substance and felony firearm offenses, and the state court again placed him on HYTA probation in early 2018. (*Id.* at 6-7, Pg ID 78-79.) Defendant's convictions in early 2018 arose from a search warrant of his residence that uncovered eighteen grams of heroin packaged for sale, fifteen grams of crack cocaine, and a firearm. (*Id.* at 8, Pg ID 80.) Defendant's conviction for felony firearm formed the basis for Count One of the Indictment in the pending matter, as he possessed the firearm while under indictment in state court.

Defendant's criminal history reflects that Defendant continued to engage in criminal activity while on probation, which includes Defendant's violation of the terms of his HYTA probation on several occasions shortly before his arrest in this matter.

Defendant's HYTA probation had been transferred to Georgia, at Defendant's request, because he wanted to "escape the negative environment in Detroit" and attend school and work. The Georgia probation department never gave Defendant permission to return to Michigan or leave Georgia. (*Id*. at 9, 11-12, Pg ID 81, 83-84.) Nevertheless, the Government determined that Defendant was in Michigan in January 2019, from February 22-24, 2019, and on March 15, 2019. (*Id*.)

A video from Defendant's Instagram account posted shortly before his arrest on or about March 16, 2019, showed him holding and displaying a pistol, while sitting in a car. (*Id*. at 10, Pg ID 82; *see also* ECF No. 109 at Pg ID 546.) Defendant posted the video, along with a series of texts in which he threatens people. (3/18/19 Hr'g Tr. at 10-11, ECF No. 27 at Pg ID 82-83; ECF No. 109 at Pg ID 547-48.) In these tests, Defendant indicates that he is "coming" and states in part: "If u don't want your whole family gone please don't pay [sic] with me because that's where I'm taking it period[.]" (*Id.*)

10

In light of the above evidence, the Court is quite skeptical of Defendant's assurances that he has learned his lesson and will abide by the law if released.  The Court is not convinced that Defendant no longer poses a danger to the safety of other persons and the community if released.  The only questions that remain are whether the COVID-19 pandemic justifies Defendant's release and whether the Court should sentence him now to time served.

Undoubtedly the COVID-19 pandemic is an unprecedented and extraordinary circumstance, which poses a particular threat to detained individuals.  Defendant is understandably concerned about contracting the virus, but the same is likely true for every inmate across the country (along with every individual across the globe).  Nevertheless, courts cannot release every prisoner in response to this pandemic.  *See, e.g., United States v. Fitzgerald*, No. 2:17-cr-00295, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020) ("[T]he Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee.").

Moreover, Defendant is young (twenty-one years old) and does not claim to have health issues that would increase his vulnerability to the virus.  While no age group appears immune to COVID-19, research reflects that individuals over sixty years of age or with underlying health issues are most at risk of contracting the virus.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

*precautions/groups-at-higher-risk.html*.  Finally, St. Clair County Jail appears to have undertaken steps, consistent with Governor Whitmer's Executive Order, to mitigate the risk of the virus spreading throughout its facility.

For these reasons, the Court concludes that the COVID-19 crisis does not outweigh the risk that Defendant's release poses to the community.  And the Court cannot conclude that a sentence of time served is appropriate at this juncture (i.e., after thirteen months of incarceration) where the guideline range is 30-36 months.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Set Aside Detention Order (ECF No. 104) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Produce Grand Jury Testimony (ECF No. 96) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: April 20, 2020